Why don't you wait just a few seconds. May it please the court, my name is Charles Fruggerio and I represent Brownsville Independent School District Investigator Patrick Gabbert on this interlocutory appeal. The question, the sole question is whether or not there was a false arrest under Section 1983. The trial court held that there was a material fact issue concerning the fact that he used the wrong statute. If we look at these two statutes, one he used is false alarm or report. It should have been filed under 3708 false report. And the judge, because he used it under the false alarm report, initiating a report, the judge held that was an issue as well as the fact that under this statute it was a higher class misdemeanor. This whole thing concerns a grade change report that was the subject of an article in Brownsville that made it on TV. It was a large deal down there. Ms. Arizmendi is a school teacher and she still remains a school teacher in the Brownsville Independent School District. She alleged that she did not sign this grade change form and that because the principal's niece benefited indirectly from this other student, it actually was the principal's niece that was the subject of the grade change form, that Ms. Arizmendi claimed, I didn't sign this, someone forged my signature, and an investigation started. When Gabbert started the investigation, of course the first thing you're going to do is to negate the initial person, negate her as being a suspect, because that's her signature. There were three forms submitted to the Texas Department of Public Safety in Austin. The first two said there was a strong possibility it was Ms. Arizmendi's signature, but the DPS lab asked for more writing exemplars. The third time, when more writing exemplars were submitted, exactly like this grade change form, they determined conclusively that it was Ms. Arizmendi's signature. So therefore she had lied to Patrick Gabbert, the investigator, and that is why we had these charges that were filed. He filed under the wrong statute. You say it's all about the wrong statute. I thought the district court relied mainly on, for a Franks violation, on the statement that she initiated and communicated a report that she knew was false and baseless and caused the reaction of law enforcement to initiate an investigation, when in fact I think it was the school district that said, you need to look into this whole grade change dispute that's gotten in the news and all that. Under 4206, that's the exact wording that he used, initiating. She didn't initiate it. Brownsville called the cops. Brownsville ISD. Well. Who called the cops? Well, this is part of the school district police office department. I mean, it's all part of their school district. The superintendent is the one who said, okay, we obviously have a problem. This is on TV and the principal's niece is being benefited by something. We need to investigate. The district court found was the falsehood saying that she was the one who referred this to law enforcement? No, I think my position, your honor, is if you carve that out, the initiating, she did file a false report by the fact. You carve it out, but the falsehood the district court found was that she initiated the investigation. Yes, that's true. It's not just about citing the wrong statute. Well, that's why, if you look at 4206, that's the wording of it that he used. Unfortunately, in today's age of computers and that, you type in a thing and it popped up. So he's using that wording. He should have used the wording in 3708 under a false report. But if we take that out. You say it's a mistake, and maybe it was. Judge Hanen said there's a fact issue on whether it was reckless or intentional versus a mistake. How do we have jurisdiction to look at that part of this appeal, which is just his finding that there is a factual? I'm Johnson versus Norcross. Although it is an unpublished opinion, it is a paradigm to this case. Quite frankly, it was a warrant arrest by a warrant that was cited the wrong. It had to do with working hours and overtime of officers. And the citing of the warrant itself was a felony because they had the wrong amount of hours in it. And this court, when the trial court denied the qualified immunity, this court on appeal reversed and granted qualified immunity. And the issue that Ruth directly asked, requesting the court to rule on, is Devin Peck versus Alford. The Supreme Court has said under a warrantless arrest, if you could have arrested for any crime, then you have qualified immunity. The fact that this happens to be a warrant as opposed to a warrantless arrest, we do not feel there should be any difference. It seems to me the situation for warrantless arrests are often much more rushed, much less time to reflect, no time at a computer. Whether we extend Devin Peck remains to be seen, though that case you obviously have talked about. Let me ask you about, as your client, what is the position being taken in this case? Does he say that it was a mistake to cite one penal code section versus the other? It seems to me he also is saying that he made no error in citing the 4206 and that she had initiated the report under the statute, which is part of what Judge Costa was asking about. So let me just ask you yes or no. Is he saying this was a mistake in the warrant to cite 4206? He is now, Your Honor. But he has said other things. In his deposition, quite frankly, he didn't know that there was, he thought he was citing a false arrest, a false report. He didn't really realize, looking at, if you open the penal code up, it's basically on the same page. Well, but he also said, whether it's in the deposition or whatever, that he had alleged, that he believed that she had initiated, communicated a report orally that was false and baseless. And I guess the oral report was that that's not my signature. I'm not sure exactly what he's talking about. So he did try. Maybe this was in the deposition. You would know the evidence. So it seems to me we have that evidence, or Judge Hainan had that evidence before him in trying to figure out what exactly is going on here. And you need to. And the report that I'm referring to, Your Honors, when he investigated and she came to the office, she said that's not my signature. That's forgery. And that was the oral report, and that's the false report. And that was in September of 2013. And that's what he says, why I didn't make a mistake in using 4206. That's the right one. But as you say, just now he's now taken the opposite position. Well, it is obvious when you look at the two statutes, the one he should have filed it under. And quite frankly, our point is the fact that there was a violation of the law by filing a false report. Even though he filed under the wrong statute, it's still a violation of law, and therefore he should be entitled to qualified immunity because she did violate the law. She violated by giving him a false report because he had probable cause to believe with that third report that was conclusively established that's your signature. And all along you've been telling us someone forged your signature. That's really your signature. And therefore he should be entitled to qualified immunity under that. Now the case we cited under the Sister Circuit, under the Eleventh Circuit, that Elmore v. Fulton County School District is also a case right on point where they do apply Devin Pett. Yeah, but there were two warrants in that case, and one was bad because of a Franks violation. And they said, oh, but it doesn't matter because there's a second warrant that has no problem with it. So I mean a magistrate in that case had issued a warrant that was not defective that supported the arrest. Here, I mean you might be right on your argument, but I don't think that case supports it because here you're saying there could have been a warrant submitted to the judge that would have been signed and would have been proper. Well, I think in Elmore it was filed under assault because of spraying the water of the student in the face, and it was filed under a felony. And the court held that it could be just simple assault, and therefore since it could be simple assault, you were entitled to qualified immunity. But he did file it. I'll reiterate it again. I thought in Elmore they actually had multiple offenses, warrants for multiple offenses, but we don't have to quibble about that. But at the very least, we're saying that Devin Peck was applied there for a warrantless arrest. I mean for arrest by warrant, we're saying that it should apply in this case equally. Even though it was a warrant, Devin Peck shouldn't only be restricted to warrantless arrests. Doesn't it just undo the whole rule of the magistrate? I mean this obviously comes up more in searches actually than arrests. Franks is more common in search warrants. And you go to a judge, and that judge has to evaluate whether for that offense there's a warrant. And then you're taking the judge out of it, the magistrate out of it, if you can later say, well, yeah, we cited the wrong statute. We made some false statements in the application, but we could have told the magistrate all this, and she would have signed it I'm sure. In this case, look at what we're looking at. Inception or – I mean she did file a false report. If you just look at that from a plain reading of the probable cause affidavit, the point comes across she gave a false report. But if the whole point is we could have gotten a good warrant, why have a warrant requirement at all? You could always say that. Why do you need to go get a warrant in the first place? Just say, no, I could have got one. I could have got a good one. Our position is that he should be entitled to qualified immunity for making a mistake. And that's what qualified immunity is about. It should protect all but the plainly incompetent or those who knowingly violate the law. I thought that was one of the fat questions of whether this was deliberate or not. That was one of the things Judge Hainan thought this evidence raised and wasn't resolved yet by summary judgment evidence. But, Your Honor, I don't believe we shouldn't be looking at whether or not subjectively – I think that should be taken apart. It's objectively. Objectively, we have a report from DPS that it's her signature. That's evidence of a false report. And that's why he should be entitled to qualified immunity, irregardless of what his subjective intent was. He had – just by looking at the record, we have a report from DPS. This is your signature. You've been telling the school district and your own statement, a sworn statement, that it is not my signature. And yet it was her signature. At least the probable cause is that it was her signature based on the DPS report. And, therefore, I think he should be entitled to qualified immunity for simply – he followed the report. He didn't file it under the right statute. But there's no question that there was a violation of law here by Ms. Arizmendi by saying that it was not her signature. And, therefore, that's why we would ask for qualified immunity and ask for reversal of the trial court because there's two issues to conclude. The – initiating the report was one. And the second was the fact that Judge Hannon held that because it was a Class A misdemeanor as opposed to a Class B, that that could also raise a fact issue. But this court in Johnson v. Norcross said that is not – it should not be an issue whether or not it was a higher grade of offense. The fact is if it was an offense, you're entitled to qualified immunity. And we're asking the court to reverse the trial court and grant Sergeant Dagger qualified immunity. Thank you. May it please the Honorable Court. This matter in front of this Honorable Court really involves two issues. One is, first, does this court have jurisdiction? And the second issue is if the court was to not find a jurisdiction in this matter, then, of course, Judge Hannon's decision would stand, obviously. If the court believes it does have jurisdiction in this matter, simply put, then the next step would be whether it was probable cause under the Franks test. So what I'd like to start out is I'd like to talk about the answer to the question that the judge has asked regarding whether or not who initiated the police report. I think that was a very important question. The answer was it's a person named Anthony Warrens, who was the HR director, who had watched the television show and then decided on his own to contact, I guess, Patrick Gabert. And then he decided to go ahead and begin this investigation. At no time was my client, the appellee, did she ever file a report. Judge Hannon, we believe, had a right because that's the issue. Whether or not the appellate here today wants to discuss whether there could have been an alternative theory to have been arrested, to arrest or to have this probable cause of termination, is not what Judge Hannon looked at. If Judge Hannon looked at, the simple point was that my client, the appellee, did not file a report. Now let's talk about the Norcross decision. That's not in any way near this case. Norcross on two points. Norcross, honestly, is a very interesting case because if you look at the Fifth Circuit's rationale here, which I think was very wise, it was that there would require kind of like if you're flying an airplane. If anybody was in the military or if anybody's ever been trained as a pilot, usually there's two individuals in an aircraft. One's checking up. So in this situation, Norcass, the cross-case is analogous because Gaber, in his deposition, never had anyone cross-check his flight. In other words, he never went to his supervisor, the chief or anyone above his pay grade, to find out whether or not the warrant that he had gone and went down to the master was actually correct or not. So he actually testified he didn't need to do that. Now if he had followed the wise decision of Norcross and gone to his superior like they would teach you in the military, the thing is the supervisor or the chief would have the opportunity to say no, this isn't correct. And that didn't happen in this case. The other thing about Norcross that's distinguishable, and I think is very paramount in this decision, is whether or not in the Norcross there was the argument that there was the same statute. Now, my honorable colleague who's here arguing for the appellate has stated to this honorable tribunal today that that's an analogous situation to this. It is not. I will stipulate that the statute that my client was arrested for incorrectly for a public cause, the issue of not – for filing a false report, in Norcross you had a distinction within the same statute. And remember, you had your supervisor that also cross-checked the work that the prior detective had done. Neither of that happened. In this case you have two different statutes. I'm a former prosecutor. Most of you gentlemen probably were too. And as you know, there's a big difference between tampering with a government record and filing a false report. So this is not analogous in the Norcross case. The factual issue – My client survived in the district court was false arrest. And so the invasion of the interest is saying she shouldn't have been arrested. But if there was probable cause to arrest her for something else, how were her rights really invaded then? Well, that's a hypothetical that I'm still trying to understand, Judge. How is there probable cause to arrest for tampering with a government record? There's not one fact issue that Judge – that Detective Gaber testified in his deposition that led to that. As a matter of fact, he was very recalcitrant and was asking – Don't assume there was probable cause for making a false statement because of what the handwriting analysis said. Just assume for sake of argument. If that's true, how were her rights violated by this arrest when they had an objectively reasonable basis to arrest her? Fundamental question of the United States Constitution. She had the right to be adequately informed of what she was being arrested for. The fact that the – They don't need a warrant for the arrest under the Constitution. Well, this is a good question, but the detective had two years to get this right. This was not a knee-jerk reaction when he saw someone on the street. And he actually had two years to get this warrant actually written in the correct manner. And so there was no extingent circumstances here. I might like to also discuss another Fifth Circuit case that I think is right on point, the city of De Leon, which I found fascinating. The De Leon v. City of Dallas. This is why I love the law, because you learn these things. De Leon v. City of Dallas, 2009 case, and this is right on point with this judge. It says that it's a dubious argument that an officer can give a known false affidavit and avoid liability by fortuity that after the fact he may be able to argue some other basis for the arrest. So I was anticipating that question. That case doesn't actually cite Devon Peck, so it's not clear if it actually considered that case. Devon Peck is not applicable here because in Devon Peck it was an extensive circumstance. It was an arrest on the spot. Here we had a detective for two years that had the opportunity to make his opportunity to make the right decision, ignored the holding in Norcross, and went ahead and never went and checked with his supervisor. This is obviously carelessness. It's obviously recklessness. If you were flying an aircraft, you'd be flying this thing through the ground. And this is absolutely why Judge Hainan, I believe, stated that there was a material fact issue, and the position of appellee is that this court does not have jurisdiction. But if Devon Peck is even arguably applicable here, then doesn't that pose a problem for you, given the qualified immunity? I don't believe so, Your Honor. I don't think that is an issue. If you look at Millender v. Messerschmitt, which was the case that was Wasey decided, it says that the reason that you have two individuals checking the warrant is because that way the mistakes are not usually made in that situation. That was the carelessness and the recklessness of this detective. He made a mistake, yeah, he sure did, and it cost this person to be arrested. As a matter of fact, in the record, the detective even advised my client not to go for the magistrate. I would state that that is another form of deception, and the fact that he didn't go to a supervisor also can be implied, as Judge Hainan, I believe, did, as deception. There is a material fact issue here to be decided by the jury as to whether this warrant was basically lack of probable cause. And now my honorable colleague who is here today is saying it was just a mistake and has changed the argument to what it is today, which we have decided that the court will leave this on point. Any further questions? If that's your argument, we thank you. Thank you, gentlemen. It's an honor to be here, my first time. Are you in Brownsville as well? Yes, sir, Brownsville boy. I grew up before Texas, but I'm a Texas boy for and through. May I have the excuse to sit down? Please sit down. Thank you. An admission boy as your presiding judge. Oh, just where are you from for the record? Go ahead. Your Honor, the issue of whether or not he took it to his supervisor is not relevant to the qualified immunity analysis. And the fact that she, not only is she still a teacher, she was given the courtesy of being booked in the whole booking process in and out the door within an hour. That wasn't something that was the evil intent on behalf of Gabbard. He was trying to get her in. She was getting gotten in and out of the booking process, so she didn't have to go through any, she didn't have to spend any time in jail for that matter. Well, counsel, there are a number of equities here. We are looking at a legal conclusion. I am concerned about the point Judge Costa made with you earlier, and I wonder if you could just respond in addition to what you've done already. It seems to me if we were to uphold what you want in this case and by applying Devin Peck, it really does greatly undermine the purpose of getting a warrant in the first place. Go under a magistrate for an independent decision. And that just becomes irrelevant so long as serendipitously, maybe I didn't use enough syllables there, fortunately there is something else that the person could have been arrested for. Doesn't this gut the whole idea of going to an independent magistrate? Well, that's in our brief where we also talked about the Franks v. Delaware, because if indeed you take out the erroneous aspects, is there still probable cause? And if you take out that she initiated the report, you still have the fact that she gave a false report to a police officer. So the probable cause is still there under Franks v. Delaware if you take out the erroneous information and just look to the four corners. So as long as that information is there, there is probable cause as there was in this case. Because really there's no question she gave a false report to Sergeant Gabbard. He just filed it under the wrong statute. And if that isn't qualified immunity, quite frankly, I don't know what is. He just made a mistake. And that mistake, looking at the four corners, taking out the erroneous aspects of it, there's probable cause for the false report. We ask that you reverse the trial court and grant qualified immunity to Sergeant Gabbard. Thank you, Your Honor. All right, counsel.